UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

NADIA LACKEY, ON                                                                    PLAINTIFF
BEHALF OF C.B.,

V.                                                  CIVIL ACTION NO. 3:19-cv-00784-TSL-RPM

COMMISSIONER OF
SOCIAL SECURITY,                                                                    DEFENDANT

## REPORT AND RECOMMENDATION

### I.  INTRODUCTION

On November 4, 2019, plaintiff Nadia Lackey ("Lackey" or "plaintiff") filed this action on behalf of C.B. under 42 U.S.C. § 405(g), seeking judicial review of the denial by the defendant Commissioner of Social Security ("Commissioner") of her application on behalf of C.B. for child's insurance benefits ("CIB") under the Social Security Act ("SSA"). Doc. [1]. The plaintiff seeks CIB on account of decedent Darrin Lee Brown ("Brown") based on a disability under the provisions of 42 U.S.C. 404(d).

### II.  FACTS

The following facts arise from the administrative record. In the mid-2000s, Lackey and Brown dated for a "little over a year." Doc. [8], at 22. They did not live together during this time. *Id.*, at 23. Around June or July of 2004, the couple broke up. *Ibid.* Nevertheless, prior to breaking up, they conceived a child, C.B., who was born on January 25, 2005. *Ibid.* Following C.B.'s birth, however, Brown did not play a role in C.B.'s life. In fact, Brown only saw C.B. twice: first, when C.B. was around one year old and, once more, when C.B. was around ten years old. *Id.*, at 23–24.

1

Brown never provided, or otherwise sent, money to support C.B., despite working "on and off" during his life. *Id.*, at 23.

On March 27, 2015, Brown died of unstated causes. *Id.*, at 24. After Brown's death, Lackey contacted Brown's sister, who was her friend, as well as Brown's parents. *Ibid.* Lackey received DNA from Brown's parents and ordered a DNA test to determine whether Brown was C.B.'s father. *Ibid.* On March 16, 2016, the plaintiff received the DNA results, which showed that there was a 99.99% probability that Brown was C.B.'s natural father. *Id.*, at 60–61. Later, on January 7, 2019, the plaintiff received an Order from the Chancery Court of Hinds County, which amended C.B.'s birth certificate to list Brown as the father of record. *Id.*, at 81–82.

### III. Procedural History

On March 17, 2016, the plaintiff filed for CIB. Doc. [8], at 27. The Social Security Administration ("Administration") denied Lackey's application initially and upon reconsideration. *Id.*, at 67–68. Thereafter, on July 28, 2016, Lackey filed a request for a hearing before an Administrative Law Judge ("ALJ"). *Id.*, at 43. The plaintiff waived her right to counsel at the ALJ hearing. *Id.*, at 76. On January 18, 2018, Lackey had a hearing in front of ALJ Elizabeth DeGruy. *Ibid.* On May 31, 2018, the ALJ ruled that C.B. was not entitled to CIB. *Id.*, at 76–78. Thereafter, Lackey filed a timely appeal to the Appeals Counsel ("AC"). *Id.*, at 79. The plaintiff also submitted additional evidence, an Order to Change Name and Alter Birth Records, that the AC expressly considered. *Id.*, at 8. The AC denied plaintiff's request for review on March 21, 2019, finding that, *inter alia*, there was not a "reasonable possibility that [the additional evidence] would have changed the outcome of the decision." *Id.*, at 7–9. On November 4, 2019, the plaintiff filed the present action. Doc. [1].[1]

---

[1] While the plaintiff filed the present case *pro se*, Doc. [1], she later retained counsel, *see*, *e.g.*, Doc. [9], at 4.

## IV.   Arguments

The plaintiff makes one argument in support of remanding the present case. She argues that C.B. is a "child," as that term is defined in 42 U.S.C. § 416(h)(2)(A) ("Section 416(h)(2)(A)") [2] of the SSA. Doc. [9], at 3.[3] First, she states that Mississippi inheritance law applies because Brown was a Mississippi resident at the time of his death. *Ibid.* Pursuant to Mississippi inheritance law, the plaintiff continues, C.B. became Brown's direct heir, for any real or personal property, when the Chancery Court of Hinds County, Mississippi issued an Order concluding that Brown was the plaintiff's natural father. *Ibid.* Since social security benefits are considered personal property, the plaintiff concludes, C.B. is entitled to CIB. *Id.*, at 3–4.

The Commissioner moves this Court to affirm the ALJ's decision. Doc. [11]. The Commissioner argues that C.B. is not a "child," as that term is defined in 20 C.F.R. § 404.355. *Id.*, at 4. Starting with 20 C.F.R. § 404.355(a)(2),[4] the Commissioner argues that Lackey testified that she was never married to Brown, had not attempted to establish paternity, or received child support—eliminating 20 C.F.R. § 404.355(a)(2). *Id.*, at 5. Furthermore, under 20 C.F.R.

---

[2] In full, Section 416(h)(2)(A) states:

> (h) Determination of family status . . . (2)(A) In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Commissioner of Social Security shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, or, if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such.
>
> [42 U.S.C. § 416(h)(2)(A).]

[3] The term "child" is further defined by the Administration in 20 C.F.R. § 404.355, which is applicable to this case. *See Astrue v. Capato ex rel. B.N.C.*, 566 U.S. 541, 549, 132 S. Ct. 2021, 182 L. Ed. 2d 887 (2012).
[4] In full, 20 C.F.R. § 404.355(a)(2) states: "(a) Eligibility as a natural child. You may be eligible for benefits as the insured's natural child if any of the following conditions is met: . . . (2) You are the insured's natural child and the insured and your mother or father went through a ceremony which would have resulted in a valid marriage between them except for a 'legal impediment' as described in § 404.346(a)." 20 C.F.R. § 404.355(a)(2).

303.355(a)(3), [5] the Commissioner argues, paternity needed to be established prior to Brown's death, but he died in 2015—eliminating application of that regulatory provision. *Ibid.* Next, the Commissioner argues that 20 C.F.R. § 404.355(a)(4) [6] is inapplicable because Lackey testified that Brown only saw C.B. on two occasions, never provided any financial support, and the ALJ found that two birthday cards submitted by the plaintiff to be insufficiently specific to identify C.B. *Id.*, at 5–6. Finally, the Commissioner argues that the ALJ correctly concluded that 20 C.F.R. § 404.355(a)(1) [7] did not apply because (i) she correctly identified Miss. Code. Ann. § 93–9–27; (ii) the plaintiff and Brown were not married at the time that C.B. was born; (iii) there was no Chancery Court order legitimizing C.B.'s relationship with Brown; and (iv) the DNA evidence did not sufficiently connect C.B. to Brown despite her finding that there was 99.99% probability that C.B. was related to Brown's parents. *Id.*, at 6. For these reasons, the Commissioner concludes, the final decision should be affirmed and the plaintiff's Complaint dismissed. *Ibid.*

---

[5] In full, 20 C.F.R. § 404.355(a)(3) states: "(a) Eligibility as a natural child. You may be eligible for benefits as the insured's natural child if any of the following conditions is met: . . . (3) You are the insured's natural child and your mother or father has not married the insured, but the insured has either acknowledged in writing that you are his or her child, been decreed by a court to be your father or mother, or been ordered by a court to contribute to your support because you are his or her child. If the insured is deceased, the acknowledgment, court decree, or court order must have been made or issued before his or her death. To determine whether the conditions of entitlement are met throughout the first month as stated in § 404.352(a), the written acknowledgment, court decree, or court order will be considered to have occurred on the first day of the month in which it actually occurred." 20 C.F.R. § 404.355(a)(3).

[6] In full, 20 C.F.R. § 404.355(a)(4) states: "(a) Eligibility as a natural child. You may be eligible for benefits as the insured's natural child if any of the following conditions is met: . . . (4) Your mother or father has not married the insured but you have evidence other than the evidence described in paragraph (a)(3) of this section to show that the insured is your natural father or mother. Additionally, you must have evidence to show that the insured was either living with you or contributing to your support at the time you applied for benefits. If the insured is not alive at the time of your application, you must have evidence to show that the insured was either living with you or contributing to your support when he or she died. See § 404.366 for an explanation of the terms 'living with' and "contributions for support." 20 C.F.R. § 404.355(a)(4).

[7] In full, 20 C.F.R. § 404.355(a)(1) states: "(a) Eligibility as a natural child. You may be eligible for benefits as the insured's natural child if any of the following conditions is met: (1) You could inherit the insured's personal property as his or her natural child under State inheritance laws, as described in paragraph (b) of this section." 20 C.F.R. § 404.355(a)(1).

## V. Standard of Review

Under 42 U.S.C. § 405(g), the Court's review is limited to two inquiries: "(1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) (citing *Richardson v. Perales*, 402 U.S. 389, 400, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). *See also LeBlanc v. Chater*, 83 F.3d 419 (5th Cir. 1996). Stated differently, it "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154, 203 L.Ed.2d 504 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). However, "[c]onflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002)).

## VI. ALJ Opinion

In a short opinion, the ALJ concluded that C.B. did not meet the definition of "child" under 20 C.F.R. § 404.355. Doc. [8], at 76–78. The ALJ quickly dismissed application of 20 C.F.R. § 404.355(a)(2), (3), and (4). Addressing application of 20 C.F.R. § 404.355(a)(2), the ALJ reasoned that Lackey testified that Brown and her never were married and "broke up" nearly six months before C.B. was born. *Id.*, at 77. Addressing 20 C.F.R. § 404.355(a)(3), the ALJ reasoned that the only conceivable pre-death evidence of paternity, though received only after Brown's death, was two unsent birthday cards allegedly addressed to C.B. by Brown. However, the ALJ continued,

the birthday cards were (i) "submitted after the determination," and (ii) were insufficiently specific to conclude that the child mentioned in the card was C.B. *Id.*, at 77. Addressing 20 C.F.R. § 404.355(a)(4), the ALJ reasoned that Lackey testified that Brown and Lackey never lived together, he did not contribute money to support C.B., and Brown only saw C.B. on two occasions after his birth. *Ibid.*

Finally, the ALJ turned to 20 C.F.R. § 404.355(a)(1). *Ibid.* The ALJ properly stated that the relevant question under 20 C.F.R. § 404.355(a)(1) was whether C.B. could inherit from Brown under Mississippi inheritance law. *Ibid.* After noting that Lackey and Brown neither married nor was there an existing Chancery Court decision legitimizing C.B.'s familial relationship with Brown, the ALJ described Miss. Code. Ann. § 93–9–27(2), which creates a rebuttable presumption of paternity in Mississippi paternity law cases. *Id.*, at 77–78. After stating that Miss. Code. Ann. § 93–9–27(2) applied, the ALJ concluded that, "[w]hile the DNA testing estimates the probability of paternity of the parents of the deceased at 99.99% to the child (suggestive of a familial relationship), there is not sufficient evidence to connect the child as a descendent to the deceased wage earner." Doc. [8], at 77–78. For these reasons, the ALJ concluded that C.B. was not Brown's "child" under 20 C.F.R. § 404.355(a)(1) and denied the claim.

## VII. <u>ANALYSIS</u>

### A. Law

The sole issue raised by the plaintiff on appeal is whether the ALJ correctly determined that C.B. is not considered Brown's "natural child," as that term is defined in 20 C.F.R. § 404.355(a)(1). Doc. [9]. The Court turns to the applicable law.

In the Fifth Circuit, it is well-established that "[a] minor is entitled to survivor's benefits if he establishes that he would be entitled to inherit in an intestate distribution of the wage earner's

6

personal property under the laws of the state where the wage earner was domiciled at the time of his death." *Garcia for Rodriguez v. Sullivan*, 883 F.2d 18, 19 (5th Cir. 1989) (citing 42 U.S.C. § 416(h)(2)(A)). Nevertheless, the application of state inheritance law is "modified and tempered" by 20 C.F.R. § 404.355(b)(2). *Drake ex rel. Atwood v. Apfel*, No. CIV. 300–CV–1540H, 2001 WL 705784, at *2 (N.D. Tex. June 18, 2001). First, the regulation "dispense[s] with any state limitations period for commencing an action to establish paternity." *Id.* (citing C.F.R. § 404.355(b)(2)). Second, if a state inheritance law requires a "court determination of paternity," the Commissioner will not require an applicant to go to court but "will decide [the claimant's] paternity by using the standard of proof that the State court would use as the basis for a determination of paternity." *Ibid.*

Furthermore, the Commissioner is not under a "constitutional compulsion to give full faith and credit" to a state court judgment "nor is he bound by the [j]udgment under principles of res judicata since he was not a party to the . . . [state] court proceeding." *Warren v. Sec'y of Health & Human Servs.*, 868 F.2d 1444, 1447 (5th Cir. 1989). Instead, Section 416(h) contemplates that the Commissioner "will determine the law of the State as it has been declared by the supreme court of the state, or as it would have been decided by that court had the point been considered." *Garcia for Rodriguez*, 883 F.2d at 20. *See also Warren*, 868 F.2d at 1447 (citing *Cain v. Sec'y of Health, Ed. & Welfare*, 377 F.2d 55, 58 (4th Cir. 1967); *Gray v. Richardson*, 474 F.2d 1370 (6th Cir.1973)). The Court turns to the application of these principles.

### B. Application

Once more, the present dispute centers around whether the ALJ correctly concluded that the plaintiff was not Brown's "natural child" under Section 416(h)(2)(A) and 20 C.F.R. § 404.355(a)(1). Doc. [9, 11]. According to the plaintiff, C.B. is Brown's "natural child" because,

7

under Mississippi inheritance law, C.B. is entitled to inherit personal property from Brown. Doc. [9], at 3. The Commissioner defends the ALJ's reasoning that the DNA evidence establishing a 99.99% familial relationship between the plaintiff and Brown's parents is insufficient evidence to prove that Brown is the plaintiff's father. *Id.*, at 5–6. At the outset, the Court notes that it is undisputed that Mississippi inheritance law applies in this case.[8]

In the present case, the Commissioner's decision both applied the wrong legal standard and lacked substantial evidence.[9] The Court begins with the legal standard applied. The Commissioner's decision hinged on the ALJ's conclusion, after merely noting Miss Code Ann. § 93–9–27(2), which states that "[w]hile the DNA testing estimates the probability of paternity of the parents of the deceased at 99.99% to the child (suggestive of a familial relationship), there is not sufficient evidence to connect the child as a descendent to the deceased wage earner." Doc. [8], at 77–78.

First, and most importantly, the ALJ did not apply Mississippi inheritance law, as decided by the Mississippi Supreme Court, *Garcia for Rodriguez*, 883 F.2d at 20, but rather Mississippi paternity law—a distinct statutory scheme, *Hogan v. Buckingham ex rel. Buckingham*, 730 So.2d 15, 20 (Miss. 1998) (distinguishing between Miss. Code Ann. § 91–1–1, *et seq.* (Mississippi inheritance law) and Miss. Code Ann. § 93–9–1, *et seq.* (Mississippi paternity law)).[10] The distinction between these statutory schemes is not always a bright line. For example, paternity for

---

[8] The parties do not dispute that Mississippi inheritance law applies in this case. *See* Doc. [9], at 3; Doc. [11], at 6.
[9] In the Fifth Circuit, "'the Commissioner's final decision necessarily includes an Appeals Council's denial of a claimant's request for review' and that, therefore, 'the record before the Appeals Council constitutes part of the record upon which the final decision is based.'" *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015) (quoting *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005)). Therefore, the amended birth certificate was part of the Commissioner's decision, notwithstanding the fact that the ALJ did not consider it. The Court also notes that no arguments were raised under *Sun*. *See Whitehead v. Colvin*, 820 F.3d 776, 780 (5th Cir. 2016).
[10] In a different context, the Mississippi Supreme Court has noted that there are specific state policy reasons for the paternity analysis in inheritance cases under Miss. Code Ann. § 91–1–15(3)(c), including, *inter alia*, "the fair and just disposal of an intestate decedent's property . . . ." *Estate of McCullough v. Yates*, 32 So.3d 403, 415 (Miss. 2010) (citing *Matter of Estate of Kimble*, 447 So.2d 1278, 1283 (Miss. 1984)).

*inheritance* purposes may be established with reference to Miss. Code Ann. § 93–9–1, *et seq.* before the natural father's death because it is expressly allowed under Mississippi inheritance law. *See* Miss. Code Ann. § 91–1–15(3)(b). Nevertheless, when Mississippi inheritance law applies and a potential heir seeks to prove paternity, under Mississippi inheritance law, only *after* the alleged natural father's death, Miss. Code Ann. § 91–1–15(3)(c) applies and Mississippi paternity law is inapplicable. *Hogan*, 730 So.2d at 20. *See also Jordan v. Baggett*, 791 So.2d 308, 311 (Miss. Ct. App. 2001). This distinction goes far beyond formalities. There are substantial differences between the searching, open-ended "adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding," Miss. Code Ann. § 91–1–15(3)(c), and, for example, the various statutory presumptions and rebuttals appropriate under Mississippi paternity law, *see*, *e.g.*, Miss. Code. Ann. § 93–9–27.[11] Since the ALJ applied the wrong legal standard, the case must be remanded for further proceedings.[12]

In the alternative, there was not substantial evidence supporting the ALJ's decision. Substantial evidence, of course, "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S.Ct. at 1154 (quoting *Consolidated Edison Co.*, 305 U.S. at 229). The ALJ's most glaring error, adopted by the AC, was to read the DNA test results as establishing a 99.99% probability of paternity between C.B. and his grandparents. Doc. [8], at 77–78. This is incorrect. The DNA test concluded, in relevant part, that "[t]he combined grandparentage index (genetic odds in favor of paternity) *of the son* of the grandparents, compared to a random, unrelated man of the same race, is 60,869. The probability

---

[11] *Compare In re Estate of Johnson*, 767 So.2d 181, 182–83 (Miss. 2000); *Estate of Robinson by Jennings v. Gusta by Gusta*, 540 So.2d 30 (Miss. 1989), *with Rafferty v. Perkins*, 757 So.2d 992, 995 (Miss. 2000).

[12] Even if the Court assumed *arguendo* the ALJ's mistake was form over substance, the Court would still conclude that—under either statutory scheme—the ALJ's erroneous and exclusive reliance on DNA evidence to show proof of paternity under 20 C.F.R. § 404.355(a)(1), i.e. failing to consider Lackey's testimony under oath about her relationship with Brown, would also be legal error. *See*, *e.g.*, *Estate of Johnson*, 767 So.2d at 182–83; *Rafferty*, 757 So.2d at 992.

of paternity, assuming a 50% prior chance, is 99.99%." *Id.*, at 61 (emphasis added).[13] Furthermore, the ALJ completely ignored Lackey's own testimony about her relationship with Brown and the resulting pregnancy in evaluating the paternity issue. *Id.*, at 76–78. This testimony pointed, like the DNA test, solely in the direction of paternity. For these reasons, the case should be remanded for further proceedings.

## **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that the plaintiff's appeal is granted and the case remanded for further administrative proceedings.

## **NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which

---

[13] The term "paternity" is defined as "the quality or state of being a father" or the "origin or descent from a father." *Paternity*, The Merriam-Webster Online Dictionary (2021), https://www.merriam-webster.com/dictionary/paternity.

there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 28th day of January 2021.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE